COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Bumgardner and Frank
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.    Record No. 1706-01-1        JUDGE RICHARD S. BRAY
                                  DECEMBER 20, 2001
KENNETH WASHINGTON


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        Randolph T. West, Judge

              Stephen R. McCullough, Assistant Attorney
              General (Randolph A. Beales, Attorney
              General, on brief), for appellant.

              Robert W. Lawrence for appellee.


    Kenneth Washington (defendant) was indicted in the trial

court for felonious assault and battery of a police officer in

violation of Code § 18.2-57(C).[1]  Contending the offense resulted

from an unconstitutional search and seizure, defendant

successfully moved the court to suppress "any and all statements,

acts or other conduct that may be the basis of the" indictment.

The Commonwealth appeals pursuant to Code § 19.2-398, arguing,

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

        [1] Defendant was convicted by a jury of the subject offense
in a prior trial.  However, by unpublished opinion, a panel of
this Court reversed the decision and remanded the proceedings,
finding the trial court had erroneously refused to admit a
certain audio recording into evidence.  See Washington v.
Commonwealth, No. 2157-99-1 (Va. Ct. App. Jan. 9, 2001).

<u>inter</u> <u>alia</u>, that defendant failed to establish the standing necessary to challenge the search by police. We agree and reverse the trial court.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to a disposition of the appeal.

I.

Upon appellate review of a ruling on a motion to suppress evidence, we consider the evidence in the light most favorable to the prevailing party below, defendant in this instance, together with all reasonable inferences fairly deducible from such evidence. <u>Commonwealth v. Grimstead</u>, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). The burden is upon the Commonwealth "to show the trial judge's ruling . . . constituted reversible error." <u>Green v. Commonwealth</u>, 27 Va. App. 646, 652, 500 S.E.2d 835, 838 (1998). We review the trial court's findings of historical fact only for "clear error," but review <u>de</u> <u>novo</u> the court's application of defined legal standards to the particular facts of a case. <u>See</u> <u>Shears v. Commonwealth</u>, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).

The sole evidence before us on appeal is the uncontroverted testimony of Newport News Police Detective Best, and former officer Holloway, witnesses presented by defendant at the

-

suppression hearing.[2]  Detective Best testified that, on January 12, 1998, a confidential informant reported that a "black male" "six feet in height, approximately 200 to 210 pounds, medium brown complexion, 27 to 30 years old, with a close haircut, . . . known as Mickey, was selling cocaine from 1507 Ivy Avenue."  Acting on the tip, Best obtained a search warrant for the designated premises and "a black male known as Mickey."[3]

The following evening, at approximately 7:10 p.m., Best and Holloway, accompanied by several additional police officers, proceeded to the specified address, a residence located in the City of Newport News.  Holloway, dressed in "[k]haki corduroy pants," "a green Philadelphia Eagles baseball style hat and a blue and green windbreaker," knocked at the door, and defendant responded, opening the door "18 inches or so."  Although Holloway did not recognize defendant, he inquired, "Hey, Mickey, what's up?"  Defendant was unresponsive and, after "a few seconds," Holloway "pushed open the door the rest of the way," announced "Police.  Search warrant," and entered the residence, followed by "[t]he rest of the team," all "screaming, 'Police.  Search warrant. . . .'"

---

[2] The transcript of the earlier prosecution is not a part of the instant record and, notwithstanding defendant's repeated references to facts perhaps developed in such proceeding, we are confined to the record before us.

[3] Defendant does not challenge the validity of the search warrant.

-

As Holloway entered into the home, he pushed defendant "fifteen feet back" against "an entertainment center" and "pinned [him] there, to ensure the safety of the rest of the team" and prevent a "bottleneck at the entrance."  "Once . . . against the entertainment center," defendant "grabbed [Holloway's] weapon" and a brief struggle ensued, resulting in the arrest of defendant for the subject offense.

Defendant filed a pretrial motion to suppress "any and all statements, acts or other conduct that may be the basis of the assault and battery as the seizure and warrantless arrest of [his person] was a violation of [the] Fourth Amendment."  In support of his related argument that police had "no authority . . . to grab him and forcibly try to detain and handcuff him," defendant expressly relied upon <u>Michigan v. Summers</u>, 452 U.S. 692 (1981), and its progeny.  At the conclusion of the suppression hearing, the following exchange occurred between the court and counsel:

> THE COURT:  The only issue I am willing to review at this point is whether or not what I consider an illegal entry was made in the detention of the defendant in this case. . . .
>
> [DEFENSE COUNSEL]:  What about the arrest issue, that it was an illegal arrest?  How much force can be used or what do you need to have for him to be arrested?  He wasn't free to leave.  They physically tried to detain him without sufficient foundation.

The court then directed counsel to submit memoranda addressing the question, promising "a decision prior to the trial date."

-

As a threshold issue to the concerns expressed by the trial court, the prosecutor contended on memo that "defendant did not have standing to object to the execution of the search warrant." In responsive correspondence to the court, defendant ignored the "illegal entry" issue raised by the trial court and the related challenge to standing.  Instead, defendant continued to insist "the seizure of [his person] went beyond the deminimus [sic] detention necessitated [sic] to do a pat down or frisk" and constituted an "attempted . . . illegal arrest in violation of the Fourth Amendment."

The trial court subsequently granted the motion to suppress, concluding "defendant's rights under the Fourth Amendment . . . were violated . . . [when] police . . . failed to comply with the knock and announce rule," again faulting the police entry and ignoring defendant's seizure/arrest argument.  The Commonwealth appeals to this Court.

II.

As a threshold issue, the Commonwealth contends the record fails to demonstrate standing in defendant to object to entry by police upon the premises, a necessary predicate to support the court's rationale.[4]  We agree.

---

[4] On appeal, defendant for the first time adopts the reasoning of the trial court.

Fourth Amendment protection can only be claimed by one who "has 'a legitimate expectation of privacy' in the property searched or seized." Wells v. Commonwealth, 6 Va. App. 541, 549, 371 S.E.2d 19, 23 (1988). Thus, "[i]n order to obtain protection against unreasonable searches and seizures, [an accused] bears the burden of proving that he has standing to assert the constitutional right." McCoy v. Commonwealth, 2 Va. App. 309, 311, 343 S.E.2d 383, 384 (1986) (citation omitted).

"The test is whether the [defendant] objectively had a reasonable expectation of privacy at the time and place of the disputed search. In making the analysis the court looks to the totality-of-the-circumstances." McCoy, 2 Va. App. at 311, 343 S.E.2d at 385 (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Rakas v. Illinois, 439 U.S. 128, 143 (1978)). "[F]actors courts may consider when determining whether a defendant had a legitimate expectation of privacy in the place searched include whether the defendant had a possessory interest in the place, had the right to exclude others from the place, and took normal precautions to maintain privacy in the place." Commonwealth v. Ealy, 12 Va. App. 744, 751, 407 S.E.2d 681, 685 (1991) (citing McCoy, 2 Va. App. at 312, 343 S.E.2d at 385).

The record presently before us is silent with respect to the circumstances surrounding defendant's presence on the premises at the time of the search. No evidence suggests a possessory interest in the property, a right to exclude others from the

-

premises, precautions taken by defendant to maintain privacy or other factors relevant to an objective assessment of his related expectations.  Having thus failed to establish the requisite standing, defendant may not avail himself of Fourth Amendment protections against an unlawful entry onto the premises by police.

III.

In Michigan v. Summers, 452 U.S. 692 (1981), the Supreme Court of the United States recognized that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  Id. at 705 (footnote omitted).  Among various "legitimate law enforcement interest[s]" in such detention, the Court noted the "importance . . . [of] minimizing the risk of harm to the officers," noting "the execution of a warrant to search for narcotics . . . may give rise to sudden violence or frantic efforts to conceal or destroy evidence," circumstances that require "unquestioned command of the situation" to protect both police and occupants.  Id. at 702-03 (footnote omitted); Welshman v. Commonwealth, 28 Va. App. 20, 30, 502 S.E.2d 122, 127 (1998) (en banc); Allen v. Commonwealth, 3 Va. App. 657, 661-62, 353 S.E.2d 162, 165 (1987).

Thus, the police, while executing the instant search warrant, were permitted to briefly seize and detain defendant, physically present in the residence during the search, to facilitate access to the premises, permit a proper search and insure the safety of

-

the officers and other occupants.  When defendant struggled with police incident to such lawful detention, his conduct gave rise to probable cause for arrest.[5]

Accordingly, we reverse the trial court and remand the case for further proceedings in accordance with this opinion.

<u>Reversed and remanded.</u>

---

[5] Our resolution of the suppression issue is not intended to implicate the merits of either the prosecution or defense in the underlying cause.

-